IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
JOHNSTOWN DIVISION

| | |
|---|---|
| AFFORDABLE WIRE MANAGEMENT, LLC, | Civil Action |
| | No. 3:25-cv-00283 |
| Plaintiff, | |
| v. | |
| | *Electronically Filed* |
| CAMBRIA COUNTY ASSOCIATION FOR THE BLIND AND HANDICAPPED, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff, Affordable Wire Management, LLC ("AWM" or "Plaintiff"), by and through its undersigned counsel, hereby alleges the following for its Complaint against Defendant Cambria County Association for the Blind and Handicapped, Inc. ("CAB" or "Defendant"):

**NATURE OF THE ACTION**

1. This is an action for patent infringement arising under the patent laws of the United States, arising out of Defendant's infringement of Plaintiff's intellectual property, including United States Patent No. 12,294,206, entitled "*Cable Hangers*" (the "'206 patent"), a copy of which is attached hereto as Exhibit 1.

2. AWM brings this action timely after the issuance of the '206 Patent to address CAB's unauthorized use and exploitation of AWM's proprietary and patent-protected modular cable hanger design. CAB's ModulAir cable hanger product unfairly and unlawfully forces AWM to compete, head-to-head, against its own patented technology.

## PARTIES

3. AWM is a limited liability company organized in Delaware, with its principal place of business at 90 Washington Valley Rd., Bedminster, New Jersey 07921.

4. AWM designs, markets, and sells electrical cable and wire management solutions, including various components thereof, to the solar energy industry.

5. AWM is the sole owner of, and possesses all rights, interests, and title of the '206 patent.

6. CAB is a Pennsylvania nonprofit corporation with its principal place of business at 211 Central Ave., Johnstown, Pennsylvania 15902.

## JURISDICTION AND VENUE

7. This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. sections 1 et seq. Subject matter jurisdiction is therefore proper under 28 U.S.C. sections 1331 and 1338(a). This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

9. Venue is properly in this District pursuant to 28 U.S.C. § 1400(b) at least because CAB is incorporated and resides in Johnstown, Pennsylvania.

10. CAB is subject to personal jurisdiction in this judicial district for the same reasons that venue is appropriate here.

## FACTUAL BACKGROUND
### Background of AWM and its Founders

11. AWM is a true American success story: as a tiny five-year old startup, it has enjoyed early and rapid success in an economically significant industry with innovative, patented

technology. It was formed in March of 2020 as a Delaware limited liability corporation by founders Scott Rand and Dan Smith.

12. Scott and Dan used their own funds to start the company with the goal of offering new solutions to problems they recognized while working for many years in the solar energy business. One such solution is AWM's innovative product line called "Arden."

13. Collectively, Scott and Dan have decades of engineering and development experience with solar technology as well as deep domain experience in the deployment of multi-gigawatt utility-scale solar projects, both in the United States and abroad. From their education and work experience, Scott and Dan have developed a deep and widespread understanding of both the technology and commercial aspects of developing and constructing utility-scale solar projects.

## Industry Background

14. A utility-scale solar project, sometimes referred to as a solar farm, is an installation of a large solar power plant that produces electricity for the power grid. Generally, an installation is considered "utility-scale" if its total generation capacity is one megawatt ("MW") or greater.

15. Most commonly, utility-scale solar project are solar photovoltaic ("PV") power plants where a large number of PV modules, or solar panels are deployed, together with trackers to orient the panels to the sun's path. Inverters then convert the harvested energy from direct ("DC") current to alternating ("AC") current. Utility-scale power plants can have anywhere from thousands to hundreds of thousands of PV solar panels arrayed on extremely large parcels of land.

16. Beyond, PV panels, trackers, and inverters, these solar power systems also require the use of other components, which are collectively known as "Electrical Balance of Systems," or "EBOS." EBOS refers to everything that is necessary for the solar power plant to efficiently and

safely transport the electricity from the PV panels to the power grid (or an available storage system).

17.  Cable management systems ("CMS") are a critically important EBOS component. High ampacity cables transport the collected DC energy from each of the PV panels to an inverter for conversion to AC electricity. A high ampacity cable is a cable that has a high capacity for handling current (*e.g.,* measured in amps) and is capable of safely conducting a large amount of electrical current without overheating. These cable pathways can also include other cables, such as low-voltage lines for sensors that monitor performance and weather conditions, or power lines for motors that allow the PV panels to track the movement of the sun.

18.  Ampacity is an extremely important factor in the commercial viability of a project, and therefore a significant focus for the utility-scale solar market. The higher the ampacity, the better the current carrying capacity. The better the current carrying capacity, the more electricity that the cables can safely transport for use or storage.

### AWM's Innovative Approach

19.  AWM was the first company to develop an innovative cable hanger system solution to address the problem of overheating and decreased ampacity of cable management systems. Recognizing the new and novel solutions it was introducing to the market, AWM promptly sought to patent its innovative design of a cable hanger system. AWM filed its first U.S. provisional patent application in 2020—shortly after the founding of the company. AWM's innovative designs are the foundation of its success.

20.  A key feature of AWM's innovative cable hanger system was its design flexibility, using an extensible, modular design to accommodate the industry's demand for a range of options for the grouping and spacing arrangement of installed cables.

21. One of the significant benefits to the solar industry from this design flexibility is the ability to increase the ampacity in utility-scale solar installations. With its Arden product, AWM achieved first-mover status in offering increased-ampacity solutions in the utility-scale solar industry.

22. Prior to the debut of AWM's innovative, modular cable hanger solution, preexisting designs in the utility-scale solar industry—including those offered by Defendant CAB—had stagnated. These old options failed to address, let alone solve, the problem of decreased ampacity. But, after AWM launched its cable hanger solution, the industry is now focused on achieving higher ampacity targets for the installed cables. The only way to accomplish that from a project design perspective is to change the grouping and the spacing of the cables as configured in the cable hanger—something that is elegantly solved by AWM's patented innovation that is the subject of this case.

## AWM's Innovative Technology and Patent

23. The patent asserted in this action, the '206 Patent, issued this year, in May 2025.

24. AWM has not licensed any of its patents to anyone, including the '206 Patent.

25. The '206 patent is a continuation of application No. 18/784,025, filed on July 25, 2024, which is a continuation of application No. 17/590,498, filed on February 1, 2022, now Patent No. 12,074,417, which is a continuation of application No. 17/597,880, filed as application No. PCT/US2021/027399 on April 14, 2021, now Patent No. 11,979,008.

26. The '206 patent covers cable hangers with multiple saddles and includes an embodiment that has an attachment with additional saddles:



FIG. 12

**AWM's Competition with CAB**

27. Before AWM changed market expectations with its patented technology, CAB sold a cable hanger that was not modular.

28. In September of 2024, years after AWM innovated and debuted its Arden and predecessor line of products, CAB introduced a new cable hanger product called ModulAir. The newly-released ModulAir competes directly with AWM's Arden products, the original generation of which were first commercially released in 2020. As the name suggests, CAB's ModulAir is advertised as a modular, tiered system for cable separation, which CAB advertises as allowing for better airflow around the cables, leading to better performance and eliminating the need for derating of the cables.

29. CAB further touts the ModulAir as having flexibility to maximize the ampacity potential of the cables.

30. AWM and CAB have been, and are, direct, head-to-head competitors in an effectively two-player market. CAB is AWM's only true competitor in the market segment of CMS products for utility-scale solar projects.

31. After CAB launched its ModulAir cable hanger product in September of 2024, AWM promptly experienced competitive bid losses to CAB and its ModulAir product.

32. With the launch of ModulAir, CAB is using AWM's own innovation and patented technology to compete directly against AWM. In this way, AWM is forced to compete against its own patented technology, even though it has not, and has no interest, in granting CAB permission to use AWM's patented technology.

### CAB's Irreparable Harm to AWM

33. AWM and CAB, specifically CAB, compete directly as cable management system, or "CMS," component suppliers for installation in large utility-scale solar farms. Specifically, CAB's ModulAir CMS product competes directly with AWM's Arden CMS product.

34. AWM and CAB are effectively the only two CMS suppliers participating in the relevant market.

35. CAB and AWM are in head-to-head competition; they provide similar modular CMS products (Arden and ModulAir) consisting of similar structures (modular hangers with multiple saddles) that serve identical functions (routing solar system cables and wiring), and in identical markets (utility-scale solar power plants).

36. The two companies even market and advertise their products with the same media publications (Solar Power World Online and Solar Builder Magazine), meaning, they market their products to the same audience. Both companies advertise the same set of features and benefits, e.g., modularity and design flexibility and higher ampacity, in compliance with National Electrical Code ("NEC") provisions for free air cable installation.

37. CAB's commercialization of a competing modular cable hanger effectively erodes AWM's ability to exploit its innovation and first-mover status as the lone CMS supplier which

developed a modular cable hanger. CAB's introduction of its infringing ModulAir, therefore, deprives AWM of the intangible benefits it should have enjoyed as the company that innovated and designed a next-generation cable hanger that created—and satisfied—market demand for increased ampacity in cable management systems.

38. The direct competition between Arden and ModulAir deprives AWM of exclusivity and the ability to distinguish itself as an innovator in the market, build brand recognition and customer goodwill.

## COUNT I
## CAB'S DIRECT INFRINGEMENT OF U.S. PATENT NO. 12,294,206

39. AWM restates and incorporates by reference all of the allegations made in the preceding paragraphs as though fully set forth herein.

40. AWM is the owner, by assignment, of U.S. Patent No. 12,294,206. A true and correct copy of U.S. Patent No. 12,294,206, granted by the U.S. Patent & Trademark Office is attached as Exhibit 1.

41. The '206 patent claims novel cable hangers and claim 1 reads:

> A cable hanger, comprising:
>     a first support member including a proximal end and a distal end, wherein a bottom surface is positioned at the distal end;
>     a first hook arranged at the proximal end of the first support member and configured to attach the cable hanger to a support wire;
>     a first saddle positioned on the first support member;
>     a second saddle positioned horizontally adjacent to the first saddle; and
>     a saddle extension, comprising:
>     a second support member having a proximal end and a distal end;
>     a third saddle positioned on the second support member; and
>     a second hook arranged on the proximal end of the saddle extension and configured to attach to the first saddle to connect the saddle extension to the first saddle, wherein the second hook extends vertically above the bottom surface of the first support member.

42. CAB has directly infringed and continues to directly infringe literally or under the doctrine of equivalents, at least independent claim 1 of AWM's '206 patent by making, using, selling, and/or offering for sale, at least, its ModulAir system product (the "Accused Product") in the United States, in violation of 35 U.S.C. § 271(a).

43. A claim chart which explains in detail the manner in which CAB is infringing the claims of the '206 patent is attached as Exhibit 2.

44. CAB offers the Accused Product for sale in the United States at least via CAB's website: https://www.cabproducts.com/cab-solar-debuts-free-air-solution-modulair-hanger-system/.

45. Attached hereto as Exhibit 3 is a printout of the landing page for https://www.cabproducts.com/cab-solar-debuts-free-air-solution-modulair-hanger-system/, through which CAB offers the Accused Product for sale in the United States.

46. CAB's infringement of the '206 patent has caused and continues to cause immediate and irreparable damage to AWM in an amount to be determined at trial. AWM is entitled to its damages, including without limitation, lost business opportunities, reasonable royalties, lost profits, future lost profits, price erosion, and/or damage to goodwill.

47. CAB's infringement of the '206 patent has caused and will continue to cause immediate and irreparable harm to AWM for which there is no adequate remedy at law, unless this Court enjoins and restrains such activities.

48. By correspondence dated September 3, 2025, AWM notified CAB that, after review and investigation of CAB's products, including a comparison of CAB's products to the claims of the '206 patent, AWM concluded that certain of CAB's products, particularly CAB's ModulAir

system product as advertised on CAB's website, infringes one or more claims of the '206 patent. A copy of AWM's September 3, 2025 correspondence to CAB is attached hereto as Exhibit 4.

49. CAB has had actual notice of the '206 patent and that it makes and/or has made, uses, offers for sale or sells in the United States products that infringe the '206 patent since at least as early as September 3, 2025.

50. Upon information and belief, CAB knew of the '206 patent, and, as a result, its infringement of the '206 patent is willful and deliberate.

51. Alternatively, CAB's infringement of the '206 patent was objectively reckless due to the fact that its actions constituted infringement of a valid patent, and CAB knew or should have known of this objectively-defined risk because the risk was so obvious, as AWM's intellectual property is publicly searchable.

52. AWM is entitled to enhanced damages pursuant to 35 U.S.C. § 284, and costs, including attorneys' fees, incurred prosecuting this action.

## COUNT II
## CAB'S INDIRECT INFRINGEMENT OF U.S. PATENT NO. 12,294,206

53. AWM restates and incorporates by reference all of the allegations made in the preceding paragraphs as though fully set forth herein.

54. CAB has indirectly infringed and continues to indirectly infringe literally or under the doctrine of equivalents, at least independent claim 1 of AWM's '206 patent, in violation of 35 U.S.C. § 271(b), (c), (f).

55. CAB's ModulAir system includes cable hangers especially made for or adapted for infringing use, and CAB sells and has sold the cable hanger components for use in practicing the claims of the '206 patent.

56. CAB's ModulAir system constitutes a material part of the patented claims in the '206 patent and are not staple articles or commodities of commerce suitable for a substantial noninfringing use.

57. CAB, with specific intent, actively induces third-party direct infringers—such as CAB's customers, and end users of its cable hanger components to practice the invention claimed by AWM's '206 patent, and CAB has knowledge that the induced acts constitute patent infringement.

58. CAB's acts of indirect infringement of the '206 patent are willful and have caused and will continue to cause substantial damage and irreparable harm to AWM, and AWM has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, AWM requests the Court grant the relief set forth below:

A. Enter judgment that CAB had directly infringed, and continues to directly infringe, one or more claims of U.S. Patent No. 12,294,206;

B. Enter judgment that CAB had indirectly infringed, and continues to indirectly infringe, one or more claims of U.S. Patent No. 12,294,206;

C. Enter judgment that CAB's acts of patent infringement are willful;

D. Order CAB to account for and pay damages caused to AWM by CAB's unlawful acts of patent infringement;

E. Award AWM increased damages and attorney fees pursuant to 35 U.S.C. §§ 284 and 285;

F. Award AWM the interest and costs incurred in this action;

No. 3:25-cv-00283

G. Temporarily, preliminarily, or permanently enjoin CAB, its parents, subsidiaries, affiliates, divisions, officers, agents, servants, employees, directors, partners, representatives, all individuals and entities in active concert and/or participation with it, and all individuals and/or entities within its control from engaging in the aforesaid unlawful acts of patent infringement; and

H. Grant AWM such other and further relief, including equitable relief, as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

AWM demands trial by jury on all issues triable as a matter of right at law.

Respectfully submitted,

**THE WEBB LAW FIRM**

Dated: September 3, 2025

s/ *Kent E. Baldauf, Jr.*
Kent E. Baldauf, Jr. (PA ID No. 70793)
Bryan P. Clark (PA ID No. 205708)
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
412.471.8815
412.471.4094 (fax)
kbaldaufjr@webblaw.com
bclark@webblaw.com

*AND*

Matthew S. Galica (*PHV Forthcoming*)
James Wodarski (*PHV Forthcoming*)
Williams S. Dixon (*PHV Forthcoming*)
**MINTZ, LEVIN, COHN, FERRIS GLOVSKY AND POPEO PC**
One Financial Center
Boston, MA 02111
617.542.6000
617.542.2241 (fax)
msgalica@mintz.com
jwodarski@mintz.com
wsdixon@mintz.com
*Attorneys for Plaintiff*

No. 3:25-cv-00283

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of September, 2025, I electronically filed the foregoing **COMPLAINT FOR PATENT INFRINGEMENT** with the Clerk of the Court using the CM/ECF system which sent notification to all counsel of record.

**THE WEBB LAW FIRM**

s/ *Kent E. Baldauf, Jr.*
Kent E. Baldauf, Jr.